These two cases arise out of damage caused by a fire which occurred on June 24, 1941, in a 5-room cottage owned by Shell Oil Company, and leased and occupied by Henry Frank Letts, at Iowa, Louisiana. On the date aforesaid, while the cottage was being reconditioned and while the varnish on the floors of the living room, dining room and kitchen was being removed with a preparation known as Kut-All paint and varnish remover, and alcohol, referred to as Shelacol, the said varnish remover apparently caught on fire and thereby created an instantaneous fire in the cottage, damaging the cottage and the furniture and other contents thereof.
The plaintiffs allege that the job of reconditioning the cottage was contracted for by the Shell Oil Company with Krause Managan, Inc., and that thereafter Krause Managan, Inc., sub-contracted the job to Emmett Young, Inc., and that the fire resulted through the negligence of the servants of Emmett Young, Inc., in applying the volatile Kut-All and alcohol without exercising proper precautions, particularly in allowing the automatic water heater pilot light to remain turned on while this volatile material was being applied, and also in using matches and smoking cigarettes while the job was being performed. In the alternative, the plaintiffs plead that this case involves the doctrine of res ipsa loquitur for the reason that the reconditioning of the cottage was entirely and completely under the control of the servants of the sub-contractor, Emmett Young, Inc., to-wit: Converse Jason Addison and Jesse Watson, and that it is incumbent on the defense to explain the origin and cause of the fire and the circumstances surrounding it. The petitions also allege that Krause Managan violated its contract in two respects, namely, that it failed to carry liability insurance as agreed in the contract, and secondly, that it sub-contracted, contrary to the contract.
The defendants filed exceptions of no cause and no right of action, which were overruled, and thereafter the defendants Krause Managan filed answers in which they denied the material allegations of the petitions and in which it in effect sets forth that the plaintiff Shell Oil Company gave the contract to it, Krause Managan, with the understanding that Emmett Young, Inc., would be the sub-contractor and with the understanding that Shell Oil Co. was satisfied with the insurance status of Krause Managan. This defendant also alleged that the proposed work was sub-contracted unto the said Emmett Young, Inc., at the suggestion and with the full approval of Shell Oil Company. The answer of Krause Managan sets forth, on information, that while the employees of Emmett Young, Inc., were painting the kitchen of the cottage, the plaintiff Henry Frank Letts disconnected gas pipes connected to the stove, and failed to properly seal them and that they were left leaking and further, on information, that the said Henry Frank Letts and his wife, Grace Louise Letts, at the time the fire broke out, were using hot water from the automatic water heater, and were again grossly negligent; that this gross negligence was the proximate cause of the fire. In the alternative, in the event that the Court should find that Addison and Watson, the employees of Emmett Young, Inc., who were engaged in the reconditioning job, were guilty of negligence, then and in that event, they specially plead that the plaintiffs, Henry Frank Letts and his wife, Grace Louise Letts, were guilty of contributory negligence, which was a proximate cause of the accident.
The other defendant, Emmett Young, Inc., filed an answer similar to that of the defendant Krause Managan, and in addition filed a call in warranty on Krause Managan, setting forth that they paid the sum of $75 for providing insurance as called for in the contract in the minimum sum of $5,000 for the protection of defendant *Page 841 
against claims such as advanced herein by plaintiffs, which insurance was not carried.
Thereafter, the defendant Emmett Young, Inc., filed a supplemental answer setting forth that Addison and Watson, through whose negligence the fire is alleged to have occurred, were not its employees, but were the employees of John J. Ramsey, and that the said John J. Ramsey was acting as an individual contractor. Apparently this supplemental answer, filed after the first answer, which admitted that Addison and Watson were employees of the defendant, Emmett Young, Inc., and which fact is brought out by the evidence, was not taken seriously by the trial court, and does not appear to be an issue in the case. It seems clear from the record that Ramsey was not an independent contractor but was merely the superintendent or foreman of Emmett Young, Inc.
On the above pleadings the questions were presented to the trial court, the plaintiff Henry Frank Letts claiming the sum of $1,626.56, itemized as $1,296.56 for the loss of household goods, $130 for an additional food bill during the interim June 25, 1941, and August 15, 1941, when the house was uninhabitable, and $200 for inconvenience and hardship resulting from loss of the house, and plaintiff Grace Louise Letts $60 for the loss of a cedar chest and wool rug belonging to her separate estate, and $200 for her personal inconvenience and hardship, and the plaintiff Shell Oil Company claimed $1,978 for damage to the cottage.
The trial court found that the fire was caused by the negligence of Addison and Watson, employees of Emmett Young, Inc., sub-contractor of Krause Managan, and rendered judgment in favor of plaintiff Shell Oil Company against the defendants Krause Managan, Inc., and Emmett Young, Inc., in solido, in the sum of $1,978, and against the same defendants, in solido, in favor of Henry Frank Letts in the sum of $1,466.56, and Grace Louise Letts in the sum of $60, with legal interest on each judgment from judicial demand.
The defendants have appealed.
On the appeal the defendants contend that the plaintiffs have failed to sustain the burden of proof to show that the fire was caused by negligence on the part of defendants or their employees and that consequently their cases should be dismissed at their costs. In the alternative, the defendants contend that even though negligence on the part of the employees of the defendant, Emmett Young, Inc., should be found, that the plaintiffs, Mr. and Mrs. Letts and the Shell Oil Company, through its representative and agent, Mr. Aiken, were guilty of contributory negligence barring said plaintiffs from recovering. The defendants contend further that since the plaintiffs, Mr. and Mrs. Letts, were actually on the premises at the time the work was being done and at the time of the fire, and since Mr. Aiken, the mechanical engineer and agent of Shell Oil Company, was supervising the work, the doctrine of res ipsa loquitur does not apply herein.
[1] The record reveals the following facts: Shell Oil Company entered into a contract to repair and recondition several houses at its camp at Iowa, Louisiana, used by its employees, including the house occupied by Henry Frank Letts, who was employed by Shell Oil Company as store keeper. The cottage in question faces south, with a porch in front, the living room, dining room and kitchen on the west side, and a bedroom, a bath, a bedroom and a screened porch on the east side. On the day of the fire, in the morning, it appears that the furniture in the living room and dining room had been moved into the front bedroom for the most part, and some few things in the back bedroom, and that the furniture in the kitchen had been stored on the rear screened porch, including the stove, which had been disconnected. There is some contradiction in the evidence as to who disconnected and moved the stove, but regardless, the preponderance of the evidence shows that it was properly disconnected and that the stop valve was closed and that there was no leak in the pipe. It appears that some time in the morning of June 24th, Addison and Watson began to apply the varnish remover on the west side of the house, beginning *Page 842 
with the living room, and then going into the dining room, and apparently later in the kitchen, although their testimony at the trial is to the effect that at the time of the fire, about 1 p.m., Addison was spreading Kut-All in the dining room, and Watson was rubbing alcohol in the living room, and that neither was working in the kitchen.
It is shown that during the reconditioning work Henry Frank Letts and his wife were occupying the back bedroom, and that at 12 o'clock on the day of the fire Mrs. Letts left the house and met her husband in front and that they went out for lunch; that they returned at about fifteen minutes to one, and Mr. Letts thereupon went to the bath room to shave, and his wife stayed in the back bedroom for some few minutes, and then joined him in the bath room for the purpose of powdering her face and fixing up to go out; that while they were in the bath room the fire broke out, and upon hearing Addison and Watson stumping and running, they realized that something was wrong, and upon opening the door, ascertained that there was a fire and thereupon made their exit through the front bedroom, having to climb over furniture and having to break a window in order to get out; and that by that time there were large flames and smoke, and it was impossible to save any of the furniture; that shortly thereafter a fire truck of the Shell Oil Company arrived, and by means of a water hose and chemical extinguishers the fire was extinguished, but only after the house was completely gutted and the contents almost entirely destroyed.
As to the cause of the fire, the trial judge concluded that it started from the pilot light of the automatic water heater, which admittedly was left burning during the reconditioning work. In fact, the trial court found that Kut-All was spread not only in the living room and dining room, but also in the kitchen, and his finding is confirmed by the fact that the floors in all three rooms were charred, whereas the floors on the other side of the house were not charred. Mr. and Mrs. Letts testified that they did not use the hot water just prior to the fire, but counsel for the defendant contend that this testimony is not reasonable, for the reason that Mr. Letts was shaving and that it is customary to use hot water for shaving. Be that as it may, the fact remains that the employees of the contractor were applying this volatile varnish remover without taking the precaution of cutting off the pilot light of the automatic water heater. It is significant to note that both of these employees signed clear-cut statements, right after the fire, to the effect that the fire was caused by the pilot igniting the mop with which Addison was spreading Kut-All in the kitchen. It is true that these witnesses deny knowing the contents of the statements they signed, although the statements are very short and very clearly expressed, giving the rather weak explanation that they were trying to assist plaintiff Letts to collect insurance. It would seem that Letts could have collected his insurance regardless of the cause, unless he had deliberately set the house on fire.
The evidence also shows that while Kut-All was being applied, all windows and doors were open, and that a slight breeze was blowing from the southwest creating a draft through the living room, dining room and kitchen, and that being so, as observed by counsel for plaintiffs, it is apparent that even if the Kut-All had not yet been applied on the kitchen floor, that the fumes from the Kut-All on the dining room floor would naturally be blown towards the kitchen.
We are firmly of the opinion that the finding of fact by the trial judge, that this fire was caused solely by the negligence of Addison and Watson, employees of Emmett Young, Inc., in spreading this inflammable varnish remover while a pilot light on an automatic water heater was burning, is correct. No other logical explanation of the fire is shown by the record in this case.
Some experts testified that it was not customary to put out pilot lights on gas heaters when spreading varnish remover, but regardless of custom, the fact remains as admitted by these experts, that the presence of any flame while applying this substance is dangerous. *Page 843 
[2] The Court of Appeal, Orleans Circuit, in the case of Mercury Insurance Company v. Hodges et al., 199 So. 526, held, in a fire insurer's suit against insured's tenant and contractor hired to refinish floors in apartment for reimbursement of amount paid under fire policy, that evidence showed that contractor, whose employees had spread composition made by dissolving a putty-like substance in gasoline on floor just before fire started, was negligent in failing to determine whether pilot light of automatic gas water heater in adjoining room was burning when composition was spread on floor and in leaving all windows closed, that fire was the direct result of those negligent acts, and that contractor was therefore responsible for loss. We see no appreciable distinction between that case and the one at bar. In that case, the windows were closed and the fumes inclosed, making the fumes susceptible of being ignited by the pilot light. In our case, there was a wind or breeze blowing from the south, through the front door, the sitting room, dining room and into the kitchen towards and in the direction of the automatic gas water heater, thus causing the fumes eminating from the highly volatile material being used to be highly susceptible of ignition by the flame of the pilot light. In fact, the preponderance of the evidence shows that the fire instantaneously spread at about 12 inches from the floor. We are of the opinion that it was the duty of defendant's workmen to use the very highest degree 'of care, under the existing circumstances, to remove every possible fire hazard, leaving nothing to chance, before applying the very inflammable materials on the floor, particularly more so when the wind was in the direction of the automatic gas water heater.
[3] Admitting for the mere sake of argument that the cause or origin of the fire has not been shown with sufficient certainty, then we should say that the defendants are still not absolved from liability. If the record fails to show to a certainty — as found by the trial judge — that the fire was caused by application of the volatile material with the pilot light burning, then certainly no other theory has been established, and if there is no conclusive showing to account for the fire, then the doctrine of res ipsa loquitur applies. Defense counsel contend that the doctrine should not apply, for the reason that the plaintiffs, Mr. and Mrs. Letts, were in the house, and for the further reason that Mr. Aiken, the mechanical engineer for Shell Oil Company, was supervising these reconditioning jobs; but the fact remains that the actual reconditioning job was entirely in the hands of and under the control of Emmett Young, Inc., and its employees and that neither Mr. Aiken nor Mr. and Mrs. Letts, nor anyone else could in any way direct or control these employees, who were supposed to be experts and to know what they were doing. The facts of the case warrant application of the doctrine of res ipsa loquitur. The application of this doctrine, together with established facts, makes out a case in plaintiff's favor; and defendants have not overcome the prima facia case thus established.
[4] The defendants urge their contributory negligence plea in bar of plaintiff's recovery. They base their plea on the contention that the Shell Oil Company furnished the product being used by the defendants and that its engineer supervised the work; that Letts and his wife were in the house while the floors were being cleaned; that Letts had moved some of the gas pipes in the kitchen that morning and that he was using hot water at the time the fire started.
The mere fact that Letts and his wife were in the house cannot be said to have been negligent; they had nothing to do with the applying of the material being used. The fact that Letts may have disconnected the stove in the morning also has no connection with the fire. The preponderance of the evidence is to the effect that all connecting pipes were properly closed, without any gas escaping. Neither do we see any connection or negligence on the part of Letts in using the hot water to shave. Had defendant's employees performed their duty in seeing that the pilot light was off, Letts still could have used the hot water left in the tank, or could have shaved without hot water as he contends *Page 844 
he did. He could presume that defendant's employees were not derelict in their duties. The defendants cite the case of Mason v. Carter Packet Co., 165 La. 904, 116 So. 378, in substantiation of their position. Without discussing the case, we find the case inapposite to the case at bar.
[5] As to the alleged negligence of the Shell Oil Co., we cannot see wherein that plaintiff was in any wise negligent. The mere fact that it furnished the material cannot be said to constitute negligence. Its engineer was not in charge of the application of the material.
[6] The defendants further contend that the Shell Oil Company was a "joint tort-feasor" with the defendants, and was under a special duty to warn against any danger, and cites the case of Clark v. Engelhardt, 9 La. App. 334, 120 So. 498. We see no application of that case to the one at bar. Conceding that it may have been a "joint tort-feasor" in so far as the Letts were concerned, yet the Letts could sue any of the joint tort-feasors as they may choose without complaint from those that they sued.
We therefore hold that the plea of contributory negligence is untenable under the facts in the case, plaintiffs being free of any negligence.
We now proceed to a consideration of the amounts to be awarded.
[7] The defendants concede, in the event of liability, that the amount awarded to the Shell Oil Company has been fully proved, but seriously dispute the awards to Mr. and Mrs. Letts.
The damages to Mr. and Mrs. Letts are based almost entirely on the list of properties prepared by them immediately after the fire. Some of the articles were listed and valued by them from their viewing the damaged articles, while most of the articles were listed and valued from memory. Mr. and Mrs. Letts made a sincere attempt to list their actual losses; but there is a natural tendency to exaggerate in their own favor and the evidence itself shows that the items were listed according to cost prices, with no allowance for depreciation.
Shortly after the fire Mr. Floyd DeWitt, Manager of the Lake Charles Fire Company Adjustment Bureau, an admittedly experienced and capable adjuster of fire insurance claims, called on Mr. Letts with reference to the loss sustained by him on which insurance was carried in the maximum amount of $1,000. In connection with his investigation, in order to adjust the fire loss, he examined the list presented to him by Mr. Letts, and checked the larger items, and on that list he applied what he refers to as the general depreciation of 25%, arriving at a final value of $1,811.20. In our opinion, while the depreciation applied may be somewhat arbitrary, it is at least fair and is the opinion of a recognized expert.
Out of this $1,811.20, $60, or rather $60 less 25% that is $45 represents the claim for the separate property of Mrs. Letts. On the property damage it would seem that an award of $766.20 to Mr. Letts, and an award of $45 to Mrs. Letts ($1,000 having been paid by the Insurance Company) are fair and fully represent the losses sustained by them.
[8, 9] As to the item of $200 allowed to Mr. Letts for inconvenience caused by loss of his home during the time it was being repaired, we find that this inconvenience, if any, was very slight, for the reason that all it amounted to was that he and his family lived in a guest rooming house furnished to him by his employer, free of rent, where they apparently had all conveniences, except the convenience of cooking their own meals. Such item is too conjectural and speculative to merit an award. He also makes claim for $130 as additional expense resulting from having to eat meals in restaurants and a boarding house, but there is no proof that his expenses were increased. He admits in his testimony that his expenses were approximately the same as before. These items of damage are disallowed.
Accordingly, the judgment in favor of Henry Frank Letts will be reduced to the sum of $766.20, and the judgment in favor of Grace Louise Cox Letts will be reduced to the sum of $45, and as thus amended the judgment below will be affirmed. *Page 845